JOHN E. PEER - State Bar No. 95978
CAITLIN R. ZAPF - State Bar No. 255450
**WOOLLS & PEER**
A Professional Corporation
One Wilshire Boulevard, 22nd Floor
Los Angeles, California 90017
Telephone:  (213) 629-1600
Facsimile:   (213) 629-1660
jpeer@woollspeer.com
czapf@woollspeer.com

Attorneys for Intervenors,
American Casualty Co. of Reading, PA
and Continental Casualty Company

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS, INC. and THE COLLEGIATE LICENSING COMPANY,<br><br>Defendants.<br><br>AMERICAN CASUALTY COMPANY OF READING, PA, and CONTINENTAL CASUALTY COMPANY<br><br>Intervenors. | Case No.:  C11-04897 JW<br><br>Assigned to Hon. James Ware<br><br><br>AMERICAN CASUALTY COMPANY OF READING, PA'S AND CONTINENTAL CASUALTY COMPANY'S  COMPLAINT IN INTERVENTION |

By leave of Court, Intervenors American Casualty Company of Reading, PA ("American Casualty") and Continental Casualty Company ("Continental") (at times collectively "Intervenors") file this Complaint and thereby intervene in this action to protect their interests. Intervenors allege as follows against defendant Collegiate Licensing Company ("CLC") only:

1. American Casualty is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Chicago, Illinois. American Casualty is, and at all relevant times was, authorized to do business in the State of California and is engaged in the business of insurance.

2. Continental is organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois. Continental is authorized to do business in the State of California and is engaged in the business of insurance.

3. Intervenors are informed and believe, and thereon allege, that defendant CLC is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia.

4. CLC is a named insured under the American Casualty and Continental policies described below and has sought coverage for the Underlying Lawsuits from American Casualty and Continental. The Court has personal jurisdiction over CLC based on its substantial activities in the district and its status as defendant in the Underlying Lawsuits pending in this district.

## JURISDICTION AND VENUE

5. This Complaint in Intervention is brought pursuant to Federal Rule of Civil Procedure, Rule 24. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure, Rule 57.

6. An actual, justiciable controversy exists within the meaning of 28 U.S.C. § 2202 between defendant CLC and Intervenors regarding the scope and extent of insurance coverage provided by Intervenors' policies, as described more particularly below.

7. This Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs and Intervenor-plaintiffs and defendant are citizens of different states. This Court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims herein alleged since they are so interrelated that they form part of the

same claim or controversy as the present action.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the underlying events giving rise to this declaratory relief action took place in this district.

## INTRADISTRICT ASSIGNMENT

9. Assignment is proper in this division under Local Rule 3-2(c) and (d) because a majority of the Underlying Lawsuits giving rise to this action are venued in this division.

## GENERAL ALLEGATIONS—THE UNDERLYING ACTIONS

10. The present action arises out of a series of lawsuits, the majority of which were filed in the present district, alleging Electronic Arts, Inc. ("EA"), CLC and the National Collegiate Athletic Association ("NCAA") misappropriated the underlying claimants' and class members' images and likenesses, without compensation, for use in EA's video games and other products. Many of the underlying lawsuits allege the NCAA required all student-athletes to sign forms that purported to require the student-athletes to release in perpetuity their rights to receive any compensation for their participation in collegiate athletics. Many of the underlying complaints allege EA has produced video games, in addition to other promotional materials, that feature college football and basketball players' likenesses and images, albeit absent their names.

11. Based on information and belief, most of the Underlying Lawsuits have been related and/or consolidated into one action entitled *In Re NCAA Student-Athlete Name & Likeness Litigation*. Some of those lawsuits may have been dismissed, and additional actions may be included at a later date. The Underlying Lawsuits include:

    a. On or about May 5, 2009, Samuel Keller filed Case No. CV-09-1967 entitled *Keller, et al. v. Electronic Arts, Inc. et al.* on behalf of himself and others against EA, CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, several lawsuits have been

consolidated with this one and renamed *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit B.

   b. On or about July 21, 2009, Edward O'Bannon filed Case No. CV-09-3329 entitled *O'Bannon, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit B.

   c. On or about September 4, 2009 Bryon Bishop filed Case No. CV-09-4128 entitled *Bishop, et al. v. Electronic Arts, Inc., et al.* on behalf of himself and others against EA, CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit C.

   d. On or about September 15, 2009, Brad Nuckles and Ryan Lawson filed Case No. 27864 entitled *Nuckles, et al. v. National Collegiate Athletic Association, et al.* on behalf of themselves and other former student athletes in the Circuit Court for Washington County, Tennessee against CLC and the NCAA. A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit R.

   e. On or about October 14, 2009, Craig Newsome filed Case No. CV-09-4882 entitled *Newsome, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true

and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit E.

  f. On or about October 27, 2009, Michael Anderson filed Case No. CV-09-5100 entitled *Anderson, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit F.

  g. On or about October 29, 2009, Danny Wimprine filed Case No. CV-09-5134 entitled *Wimprine, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit G.

  h. On or about November 13, 2009, Samuel Jacobson filed Case No. CV-09-5372 entitled *Jacobson, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit H.

  i. On or about November 13, 2009, Damien Rhodes filed Case No. CV-09-5378 entitled *Rhodes, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. Based on information and belief, this lawsuit was consolidated with *In Re NCAA Student-Athlete Name & Likeness Litigation.* A

true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit I.

j. On or about February 12, 2010, Ishmael Thrower filed Case No. C-10-632 entitled *Thrower, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit J.

k. On or about December 8, 2010, Bobby Maze and Jordon Dixon filed Case No. CV-10-5569 entitled *Maze, et al. v. National Collegiate Athletic Association, et al.* on behalf of themselves and others against EA, CLC and the NCAA in the U.S. District Court for the Northern District of California. A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit L.

l. On or about January 26, 2011, Oscar Robertson, Tate George and Ray Ellis filed Case No. CV-11-0388 entitled *Robertson, et al. v. National Collegiate Athletic Association, et al.* on behalf of themselves and others against EA, CLC and the NCAA in the U.S. District Court for the Northern District of California. A true and correct copy of this complaint, as tendered, was attached to National Union's complaint in this action as Exhibit M.

m. On or about October 5, 2011, William Russell filed Case No. 3:11-cv-00632-EDL entitled *Russell, et al. v. National Collegiate Athletic Association, et al.* on behalf of himself and others against CLC and the NCAA in the U.S. District Court for the Northern District of California. A true and correct copy of this complaint, as tendered, is attached hereto as Exhibit G.

12. The lawsuits described above are collectively referenced herein as the "Underlying Lawsuits." CLC tendered the Underlying Lawsuits to American Casualty and Continental seeking a defense and indemnity. American Casualty and Continental responded to those tenders and American Casualty agreed to defend

CLC against the Underlying Lawsuits. Thereafter, National Union agreed to defend CLC as an additional insured under insurance policies it issued to EA. After National Union agreed to defend CLC in the Underlying Lawsuits, American Casualty discontinued making payments for CLC's defense in the Underlying Actions based on language in its policies that made its coverage excess to any other primary coverage provided to CLC under an additional insured endorsement such as those included in the National Union policies. Since National Union announced its agreement to defend CLC, American Casualty has not paid for CLC's defense against the Underlying Lawsuits. Nor has CLC demanded that American Casualty pay defense expenses in those actions because of the primary application of National Union's coverage to American Casualty's and Continental's policies. (Continental's obligations are excess to those of American Casualty.)

## GENERAL ALLEGATIONS – THE POLICIES

13. American Casualty issued the following commercial general liability policies to CLC:

   a. Policy No. L2071894473 effective June 13, 2004 to June 13, 2005;
   b. Policy No. P2077720720 effective June 13, 2005 to June 13, 2006; and
   c. Policy No. P2077720720 effective June 13, 2006 to June 13, 2007. True and correct copies of these policies are attached hereto as Exhibits A, B and C, respectively.

14. Continental issued commercial umbrella liability policies to CLC covering the same time period:

   a. Policy No. L2071894490 effective June 13, 2004 to June 13, 2005;
   b. Policy No. P2077720734 effective June 13, 2005 to June 13, 2006; and
   c. Policy No. P2077720734 effective June 13, 2006 to June 13, 2007.

True and correct copies of these policies are attached hereto as Exhibits D, E and F,

1 respectively.

2     15.    Intervenors are informed and believe, and thereon allege, that National Union issued the following six policies to EA:

    a.    Commercial General Liability Policy No. GL 159-55-87 effective October 1, 2007 to October 1, 2008.

    b.    Commercial General Liability Policy No. GL 187-20-18 effective October 1, 2008 to October 1, 2009.

    c.    Commercial General Liability Policy No. GL 650-63-95 effective October 1, 2009 to October 1, 2010.

    d.    Commercial Umbrella Policy No. 9835261 effective October 1, 2007 to October 1, 2008.

    e.    Commercial Umbrella Policy No. 2226972 effective October 1, 2008 to October 1, 2009.

    f.    Commercial Umbrella Policy No. 27471486 to EA, effective October 1, 2009 to October 1, 2010.

National Union attached copies of those policies to its complaint in this action as Exhibits U, V, W, X, Y and Z.

    16.    Intervenors are informed and believe, and thereon allege, that CLC is an additional insured under National Union's policies listed above, as recognized by National Union's complaint in this action.

    17.    On or about May 14, 2009, CLC tendered its defense in connection with the *Keller* action to American Casualty under Policy No. L2071894473. CLC has since tendered each of the Underlying Lawsuits to American Casualty. American Casualty is informed and believes, and thereon alleges that CLC also timely tendered each of the Underlying Lawsuits to National Union.

    18.    American Casualty acknowledged each of the Underlying Lawsuits and initially agreed to defend CLC in each tendered action. Thereafter, National Union agreed to defend CLC as an additional insured under its policies issued to EA and

National Union has paid CLC's defense costs incurred in the Underlying Lawsuits since those actions were first tendered to it. After National Union agreed to defend CLC in the Underlying Lawsuits, American Casualty discontinued payments for CLC's defense based on a provision in each American Casualty policy that made American Casualty's coverage excess to the coverage provided by National Union under its additional insured endorsements.

19. Each American Casualty policy contains the following language relevant to coverage for the Underlying Lawsuits:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

**This insurance does not apply to:**

    **a. Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    ….

    c. **Material Published Prior To Policy Period**

        "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

        ….

    e. **Contractual Liability**

        "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. this exclusion does not apply to liability for damages that the insured would have in the absence of the contract.

    f. **Breach of Contract**

        "Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement".

        ….

    i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

        "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

        ….

**SECTION V – DEFINITIONS**

    ….

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    ….

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

20. American Casualty and Continental contend this language in the policies eliminates any obligation to defend or indemnify CLC for the Underlying Lawsuits.

21. American Casualty and Continental further contend that their obligations, if any, are excess to National Union's obligations to CLC and American Casualty and Continental have no primary duty to defend or indemnify CLC against the Underlying Lawsuits. American Casualty's policies contain the following pertinent language in Section IV – Commercial General Liability Conditions:

> 4. Other Insurance
>
> . . .
>
> b. Excess Insurance
>
> This insurance is excess over:
>
> . . .
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
>
> When this insurance is excess over other insurance, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

22. Continental contends it issued excess liability policies and owes no obligations to CLC in the Underlying Lawsuits. Continental's policies state, in part:

> **SECTION I – COVERAGES**
>
> **1. Insuring Agreement**
>
> We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that they insured becomes legally obligated to pay as "ultimate net loss" because of ….
>
> **SECTION V – DEFINITIONS**
>
> . . .
>
> **17. "Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are

not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

18. **"Ultimate net loss"**

   a. "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

   (1) Final adjudication on the merits; or

   (2) Through compromise settlement with our written consent or direction;

   . . .

20. **"Unscheduled underlying insurance"**

   a. "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

   (1) Primary;

   (2) Excess;

   (3) Excess-contingent; or

   (4) Otherwise;

   Except the policies listed in the Schedule of Underlying Insurance.

   b. "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

## FIRST CAUSE OF ACTION

## FOR DECLARATORY RELIEF RE DUTY TO DEFEND

(Against CLC)

23. Intervenors incorporate by reference each and every allegation contained in paragraphs 1 through 22 as though fully set forth herein.

24. An actual controversy has arisen and now exists between Intervenors, and CLC with respect to their respective rights and duties in the defense of CLC in the Underlying Lawsuits under the policies issued by American Casualty, Continental and National Union. American Casualty and Continental request this Court to make and enter a binding judicial declaration in accordance with their contentions set forth below. The requested declarations are both necessary and proper at this time in that the interest of judicial economy and substantial justice will be served thereby:

     a.    American Casualty and Continental owe no obligation to defend CLC in any of the Underlying Lawsuits.

     b.    American Casualty and Continental's obligations to defend CLC, if any, are excess of the policies issued by National Union and no obligation exists under their policies until National Union's coverages have been properly exhausted.

25. Intervenors are informed and believe and on that basis allege that CLC disputes these contentions.

## SECOND CAUSE OF ACTION
## FOR DECLARATORY RELIEF RE DUTY TO INDEMNIFY

(Against CLC)

26. Intervenors incorporate by reference each and every allegation contained in paragraphs 1 through 25 as though fully set forth herein.

27. An actual controversy has arisen and now exists between Intervenors and CLC with respect to their respective rights and duties to indemnify CLC in the Underlying Lawsuits under the policies issued by American Casualty, Continental and National Union. American Casualty and Continental request this Court to make and enter a binding judicial declaration in accordance with their contentions set forth below. The requested declarations are both necessary and proper at this time in that the interest of judicial economy and substantial justice will be served thereby:

     a.    American Casualty and Continental owe no obligation to indemnify CLC in any of the Underlying Lawsuits.

     b.    American Casualty and Continental's obligations to indemnify CLC, if any, are excess of the policies issued by National Union and no obligation exists under their policies until National Union's coverages have been properly exhausted.

28. Intervenors are informed and believe and an on that basis allege that CLC disputes these contentions.

## THIRD CAUSE OF ACTION

## FOR RECOUPMENT

(American Casualty against CLC)

29. American Casualty incorporates by reference each and every allegation contained in paragraphs 1 through 28 as though fully set forth herein.

30. American Casualty did not owe CLC a duty to defend CLC against the Underlying Lawsuits. Because American Casualty reserved its right to recoup all sums it paid to defend CLC against claims that were never potentially covered by American Casualty's policies, it is entitled to recoup from CLC all sums American Casualty paid in the defense of the Underlying Lawsuits in an amount to be proven at trial.

WHEREFORE, Intervenors demand judgment against CLC and National Union as follows:

## ON THE FIRST CAUSE OF ACTION

1. For a declaration that American Casualty and Continental owe no duty to defend CLC in connection with the Underlying Lawsuits.

2. For a declaration that American Casualty and Continental's obligations to defend CLC, if any, are excess of the policies issued by National Union and no obligation exists under their policies until National Union's coverages have been properly exhausted.

## ON THE SECOND CAUSE OF ACTION

1. For a declaration that American Casualty and Continental owe no duty to indemnify CLC in connection with the Underlying Lawsuits.

2. For a declaration that American Casualty and Continental's obligations to indemnify CLC, if any, are excess of the policies issued by National Union and no obligation exists under their policies until National Union's coverages have been properly exhausted.

### ON THE THIRD CAUSE OF ACTION

1. For an award against CLC of all sums American Casualty has paid in the defense of CLC in the Underlying Lawsuits, plus interest thereon.

### ON ALL CAUSES OF ACTION

1. For costs of suit; and
2. For such additional and further relief as the court deems just and proper.

DATED: December 16, 2011

Respectfully submitted,

WOOLLS & PEER
A Professional Corporation

/S/
_____
John E. Peer
Caitlin R. Zapf
Attorneys for Intervenor
American Casualty Co. of Reading,
Pennsylvania and Continental Casualty Co.